J-S35006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LAMONT HUDSON | : | No. 2755 EDA 2019 |

Appeal from the Order Entered August 22, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-MD-0000398-2017

BEFORE:   BOWES, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                **FILED OCTOBER 05, 2020**

The Commonwealth appeals from the August 22, 2019 order renewing the private detective's license of Lamont Hudson.  After review, we affirm.

The facts relevant to our review are as follows.  On January 23, 2017, Mr. Hudson filed a petition for a private detective's license pursuant to the Private Detective Act of 1953, 22 P.S. §§ 11–30, and it was granted on April 4, 2017.  On March 18, 2019, Mr. Hudson applied for renewal of his license. Upon being advised that the District Attorney's office was opposed to the renewal, Mr. Hudson filed a motion for reconsideration and sought a hearing in the court of common pleas.

_____

[*] Retired Senior Judge assigned to the Superior Court.

At the August 22, 2019 hearing on Mr. Hudson's renewal application, the Commonwealth stated that its opposition was based upon his false statement that he had no arrests or convictions. **See** N.T., 8/22/19, 4-5. On the renewal application, Mr. Hudson responded in the negative to the question "Has any member of the partnership, association or corporation ever been arrested or convicted of a criminal offense in this state or any other state?" An affirmative answer required that the applicant provide details on an Exhibit A submitted with the form.

The Commonwealth introduced testimony from Detective Sylvia Morales, who reviewed Mr. Hudson's renewal form and conducted a background check. **See** N.T. Hearing Volume I, 8/22/19, at 14. She learned that despite Mr. Hudson's above-stated representation, he had prior arrests on his record. **Id**. at 15. When she called him to inquire further about the discrepancy, she reached his voicemail. She left a message scheduling an appointment, but Mr. Hudson did not attend. **Id**. at 19. She acknowledged, however, that he returned her call. While she believed Mr. Hudson wanted to discuss the matter over the phone, she deemed it better to converse in person.

Unbeknownst to Detective Morales, Mr. Hudson's arrests had been expunged. **See id**. at 17 (testifying in response to a question from the court that she was unaware of the expungement). The court asked the detective what "in the statute itself formed the basis for her recommendation to deny the reapplication?" **Id**. Detective Morales stated it was the fact that she was

unaware of the expungement. In her view, "it would come under the section governing character and integrity." *Id*. at 18. In response to the court's inquiry as to whether there was any other reason for the recommendation of denial of the license, the Detective offered none. *Id*.

Mr. Hudson testified that although he went to the office several times to speak to Detective Morales, he was never given the opportunity to speak with her and was never told the reason why the District Attorney's office was opposing his renewal application. *Id*. at 20. Had he been informed that her concern involved his prior arrests, Mr. Hudson stated he would have furnished her with information about the expungement. *Id*. He explained that he answered the question on the application in the negative because his arrests were expunged. *Id*. at 22.

The Commonwealth maintained that, in light of his false statement about his arrests and his lack of cooperation with the investigation of his application, Mr. Hudson failed to demonstrate the good character and integrity required by the statute. The trial court rejected that position and granted the renewal of Mr. Hudson's private detective license.

The Commonwealth timely appealed and complied with Pa.R.A.P. 1925(b).[1] It raises one issue for our review:

---

[1] This Court was apprised that no trial court opinion would be filed as the Honorable Bernard Lerner was no longer sitting as a judge of the Court of Common Pleas of Philadelphia County. In addition, Mr. Hudson, Appellee herein, did not file a brief with this Court.

- 3 -

Did the lower court erroneously grant applicant's petition for a private detective's license, where he falsely answered that he had not been arrested or convicted of a crime in Pennsylvania or any other state, and where he otherwise failed to cooperate in the investigation of his application?

Commonwealth's brief at 4.

Eligibility for a private detective's license is governed by statute. ***See*** Private Detective Act of 1953 ("the Act"), 22 P.S. § 11-30. The Act provides that the district attorneys of the various counties have the power to enforce the Act's provisions. A license application must contain the following information:

(a) If the applicant is a person, the application shall be signed and verified by such person . . . . The application shall state the full name, age, residence, present and previous occupations, of [the applicant], that he is a citizen of the United States, and shall also specify the name of the city, borough, township, or incorporated town, stating the street and number if the premises have a street and number, and otherwise such apt description as will reasonably indicate the location thereof, where is to be located the principal place of business, . . . , and such further facts as may be required by the court of quarter sessions, to show the good character, competency and integrity of [the applicant]. [The applicant] shall, together with such application, submit to the court of quarter sessions his photograph, . . . and also fingerprints of his two hands[.] . . . Every such applicant shall establish, to the satisfaction of the court of quarter sessions and by at least two duly acknowledged certificates, that such applicant, if he be a person, or, in the case of a . . . corporation, at least one member of such . . . corporation, has been regularly employed as a detective, or shall have been a member of the United States government investigative service, a sheriff, a member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than that of patrolman, for a period of not less than three years. Such application shall be approved as to each person or individual so signing the same by not less than five reputable citizens of the community in which such applicant resides or transacts business, or in which it is

proposed to own, conduct, manage or maintain the . . . office for which the license is desired, each of whom shall certify that he has personally known the said person or individual for a period of at least five years prior to the filing of such application, that he has read such application and believes each of the statements made therein to be true, that such person is honest, of good character, and competent, and not related or connected to the person so certifying by blood or marriage. The certificate of approval shall be signed by such reputable citizens and duly verified and acknowledged by them before an officer authorized to take oaths and acknowledgment of deeds.

22 P.S. § 14(a). This Court stated in *In re Harding*, 369 A.2d 871 (Pa.Super. 1977), that "[t]he qualifications required by Section 14 were designed to make sure that only people of good character, integrity, and competence could obtain a license." *Id*. at 873.

There is no suggestion by the Commonwealth that his prior arrests would have disqualified Mr. Hudson from obtaining or renewing his private detective license.[2] Rather, the Commonwealth contends that Mr. Hudson "could have—and should have—explained the expungements on the application. By making false statements, he failed to meet the high ethical standards required under the Private Detective Act." Commonwealth's brief

---

[2] The statute does not expressly state what effect arrests or prior convictions have on an applicant's eligibility for a license. When Mr. Hudson initially applied for his private detective's license in 2017, the application did not ask whether he had ever been arrested. The only question related to criminal history was "Have you ever been convicted of a crime?" Application, 1/23/17, at Section IX Criminal History. The question was prefaced with notice that "conviction of a crime of violence shall be a disqualifying criminal offense" and that "a conviction for any other crime may be a disqualifying criminal offense." *Id*.

- 5 -

at 9. In addition, the Commonwealth argues that Mr. Hudson's lack of cooperation with the investigation evidenced a lack of integrity. *Id*.

The issue before us involves statutory interpretation, which is a question of law, for which our scope of review is plenary and standard of review is *de novo*. *See Prieto Corp. v. Gambone Constr. Co*., 100 A.3d 602 (Pa.Super. 2014). We are also required to review the trial court's factual finding that although Mr. Hudson's response was "erroneous," there was no evidence of dishonesty. We are bound by factual determinations of the trial court when they are supported by the record. *See Joseph v. Scranton Times L.P.*, 129 A.3d 404, 433 (Pa. 2015).

The renewal form asked the question: "Has any member of the partnership, association or corporation ever been arrested or convicted of a criminal offense in this state or any other state?" Renewal Application, 3/18/19, at 1. It was uncontroverted that Mr. Hudson's arrests had been expunged. Undeterred by such proof, counsel for the Commonwealth argued that, nonetheless, it was "improper" for Mr. Hudson to represent that he had no arrests "for an important law enforcement type of position."[3] *Id*. at 27. He offered no authority for such a proposition.

_____

[3] The attorney for the Commonwealth suggested that the information came from the FBI, and that the arrests would have been discovered "even if he had expunged everything." N.T. Hearing Volume I, 8/22/19, at 28. We fail to see how the fact that Mr. Hudson's records would have been inevitably discovered

It is unclear from the foregoing question that the applicant must include arrests that have been expunged. Furthermore, such an interpretation is inconsistent with the rules governing expungement generally. As our High Court explained in **Commonwealth v. Armstrong**, 434 A.2d 1205 (Pa. 1981), expungement is intended to permit individuals to avoid the potential hardships of seeking employment, licensure, or schooling associated with an arrest record. Hence, once an arrest has been expunged, generally a person need not disclose it on such applications.[4]

Expungements are governed by the Criminal History Record Information Act ("CHRIA"), 18 Pa.C.S. § 9101, *et seq*. For purposes of CHRIA, "expunge" means "to remove information so that there is no trace or indication that such information existed." 18 Pa.C.S. § 9102. CHRIA prohibits the use of arrest

---

imposed any obligation on him to disclose expunged arrests. We note further that the expungement order directed the Pennsylvania State Police to ask the FBI to return its records for destruction. The State Police subsequently notified Mr. Hudson that "all criminal history record information in the custody of this agency pertaining to" Mr. Hudson's arrest had been destroyed as of January 12, 2011, in accordance with the court order. **See** Motion for Reconsideration and correspondence from Pennsylvania State Police appended thereto. Counsel for the Commonwealth also represented to the court that the FBI retains arrest and conviction records for law enforcement purposes, and that a private detective's license is such a purpose.

[4] The trial court asked Detective Morales to confirm that "one of the reasons that one seeks expungement is because, if granted, one can answer no to the question about arrests or convictions," and then struck its own question. **See** N.T. Hearing Volume I, 8/22/19, at 14.

records where there was no conviction, even where the record has not been expunged. *See* 18 Pa.C.S. § 9124(b)(1). The statute also provides that while state licensing agencies may consider convictions when determining eligibility for licenses, they are prohibited from using convictions that have been expunged.[5]  18 Pa.C.S. § 9124(a) and (b)(2).

Similar treatment of expunged arrests is explicitly spelled out in the Controlled Substance, Drug, Device and Cosmetic Act, which provides that expunged records of arrest or prosecution "shall not hereafter be regarded as records of arrest or prosecution for the purpose of any statute or regulation or license or questionnaire or any civil or criminal proceeding or any other public or private purpose."  35 Pa.C.S. §§ 780-14. In light of the foregoing statutes addressing the treatment of arrests that do not result in conviction, expunged arrests, and expunged convictions, we will not infer an intent to misrepresent or falsify from Mr. Hudson's negative answer to the question about his arrests that had been expunged.

Furthermore, the record supports the trial court's finding that Mr. Hudson did not intend to misrepresent his criminal history. Upon learning that

---

[5] We note that § 9112(c) of CHRIA permits a court, district attorney, and the state police to retain copies of expunged criminal records from pretrial diversionary programs or probationary programs. The copies "shall be used solely for the purposes of determining subsequent eligibility for such programs, identifying persons in criminal investigations, or determining the grading of subsequent offenses."  18 Pa.C.S. §9122(c).

the District Attorney was opposed to the renewal of Mr. Hudson's license, Mr. Hudson filed a motion for reconsideration. He attached thereto an order of court dated December 6, 2010, ordering that charges related to an arrest on January 22, 2009, be expunged.[6] Mr. Hudson apprised the court that an issue arose regarding his arrests when he initially applied for his private detective license two years before. At that time he was represented by counsel, who explained to the court that the arrests were expunged, presented proof thereof, and the license issued. Mr. Hudson expressed some confusion as to why the District Attorney's office was raising the same issue again.

The trial court tried to explain to Mr. Hudson that he had "helped to create a problem where there really was no problem." *Id*. at 24. It pointed out that Mr. Hudson's prior arrests had come to the attention of the court at the initial hearing on his license application despite the expungement. Obviously, the arrests did not disqualify him from obtaining a private detective's license. The court suggested that Mr. Hudson should have treated

_____

[6] The order directed that the following agencies be served with certified copies of the order: the Philadelphia Police Department Expungement Unit; the Pa State Police, Central Record; A.O.P.C., Expungement Unit; and the First Judicial District of Pennsylvania, Data Processing Unit. In addition, the arresting agency was ordered to destroy or deliver to Mr. Hudson all criminal records, fingerprints, photographs resulting from the arrest, and the Pennsylvania State Police was to ask the FBI to return its records for destruction. A.O.P.C. was to remove the arrest record from the CPACMS computer indexes.

"this question the same way you and your counsel treated the question when you were before Judge Brandeis-Roman for the 2017 application."[7]  *Id*. at 24. Mr. Hudson agreed, but maintained that if the District Attorney had advised him that it believed he had misrepresented his arrest record, he would have brought the documentation to them the next day.  *Id*. at 25.

While acknowledging that it understood the Commonwealth's position, the court stated on the record:

> I do not find that Mr. Hudson's erroneous answer on the questionnaire about whether he had ever been arrested or convicted under the circumstances which have come out at this hearing.  **I do not find that that is any indication of lack of integrity or dishonesty on his part.**  I do find that it is a[n] indication of a certain degree of stubbornness and defensiveness on your part which probably could have been resolved a lot easier depending on which side was willing to, I guess, go the extra mile. In any event, that's not a disqualification from your receiving a license, and I am going to grant your application for renewal.

*Id*. at 28.

The record supports the trial court's finding that Mr. Hudson's negative answer on the renewal application to the question regarding arrests and convictions did not involve dishonesty or lack of integrity.  At most, the record establishes a misunderstanding of the expectations of the District Attorney's office with regard to the reporting of one's criminal record for purposes of

---

[7] This discussion reflects a misunderstanding about the contents of the initial application in 2017.  The record reveals that the questions on the initial application and the renewal application are not the same.  The initial application asked only about convictions; the renewal application asked the applicant about both arrests and convictions.

renewing a private detective's license, expectations that were not clearly articulated. Although CHRIA and other statutes provide that one need not divulge arrests that have been expunged on employment and license applications and the like, the Commonwealth maintained throughout that different rules apply when law enforcement-type jobs are involved.[8] We do not reach that question herein as the record supports the trial court's finding that there was no dishonesty involved that would disqualify Mr. Hudson for license renewal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/20

---

[8] The Commonwealth offered no authority to the trial court or to this Court establishing that applicants must disclose expunged arrests on applications for law enforcement-type licenses.